

FILED
NOV 06 2015
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| ANDREA WOOD,<br><br>Plaintiff,<br><br>vs.<br><br>PREFERRED CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP LLC, and DOES 1-50,<br><br>Defendants. | CV 14–128–M–DLC<br><br>ORDER |

Before the Court is Plaintiff Andrea Wood's ("Wood") motion for partial summary judgment on the duty to defend, and Defendant Preferred Contractors Insurance Company Risk Retention Group LLC's ("PCIC") motion for summary judgment. For the reasons explained below, the Court grants Wood's motion in part and denies PCIC's motion.

## BACKGROUND

This case arises out of alleged physical damage to Wood's home in southern California as a result of work performed by construction contractors Arturo Botello ("Botello") and Gabriel Curiel ("Curiel"). In August 2009, Wood hired

Botello and Curiel[1] to perform an extensive list of improvements to her home in Orinda, California, including what may have involved some structural work. Wood claims that the arrangement quickly went south, with Botello and/or Curiel committing a number of errors and employing generally improper construction techniques leading up to their abandonment of the project in January 2010. Thereafter, she filed a lawsuit in Superior Court of California, County of Contra Costa, on December 27, 2010.

In her complaint in the underlying action, Wood alleged four causes of action against Botello and Curiel specifically, including breach of contract, negligence, breach of express warranty, and breach of implied warranty. She cited the following defects in and damage resulting from Botello's and Curiel's work:

> [I]mproper weatherproofing, pipe and vent connections which leak, stairs that fail to comply with minimum width requirements, improper joisting of floor boards compromising the structural integrity of the floor, improper electrical panel installation resulting in a fire hazard, improper installation of a gas shut-off valve,

---

1. A primary factual contention in this case centers on whether Curiel had anything to do with the construction work on Wood's house. PCIC noted this issue in its August 9, 2012 letter denying Curiel a defense in the underlying action, and again notes it in briefing on these motions for summary judgment as part of its justification for denying a defense. However, Curiel's own actions in this case render the discrepancy a non-issue: having confessed judgment in the amount of $175,000, $17,500 of which came directly from his own pocket, Curiel and PCIC cannot reasonably contend that he had nothing to do with the construction work. Curiel accepted full responsibility for Wood's claimed damages (Doc. 18-2), and the Court finds that this issue does not constitute a genuine dispute concerning a material fact.

> installation of used and unapproved materials,
> inadequate support for vents, pipes, and a water heater, a
> cracked shower pan, gaps in the tile, non-uniform
> staining, improperly hung doors, inadequate caulking,
> and failure to remove construction debris.

(Doc. 19-2 at 3.) Wood alleged that she "incurred expenses, costs, and liabilities in the sum of at least $225,000" as a result of these issues. (*Id.*)

Curiel was insured under a commercial general liability insurance policy issued by PCIC, effective October 31, 2009 ("the Policy"). The intended term of the Policy was one year, but Curiel's coverage lapsed on December 21, 2009 due to his failure to make premium payments. Curiel was covered under two subsequent policies as well, but neither coincide with the time during which he worked on Wood's house.

The Policy provided coverage for "those sums that the insured [became] legally obligated to pay as damages because of . . . 'property damage' to which" the Policy applied. (Doc. 19-1 at 13.) The Policy defined "property damage" as, in part, "physical injury to tangible property, including all resulting loss of use of that property." (*Id.* at 29.) Coverage was provided for property damage to the extent it was caused by an "occurrence" which took place "during the policy period," though an endorsement replaced the phrase "policy period" with "Term." (*Id.* at 8, 13.) The Policy defined "occurrence" as "an accident, including

continuous or repeated exposure to substantially the same general harmful conditions. (*Id.* at 28.) Finally, the Policy defined "Term" as the calendar year following the inception date. (*Id.* at 11.)

Curiel tendered a defense of the underlying action to PCIC in a letter dated June 27, 2012, and PCI responded on August 9, 2012. In the response letter, PCIC first noted that Curiel's counsel "confirmed that [Curiel] had no knowledge, nor did he consent to [Botello] using his [contractor's] license in any matter." (Doc. 19-3 at 1.) PCIC then indicated that there was no coverage for Wood's claims against Curiel under the October 31, 2009 policy "due to the fact that there [was] no occurrence or property damage during this policy period," i.e. between October 31 and December 21, 2009, given that "the work was completed in January 2010." (*Id.*) PCIC proceeded to cite numerous policy provisions in the letter, but never explained why any of them precluded coverage. PCIC ultimately denied a defense in the letter.

Wood and Curiel then settled the underlying action on March 6, 2013. Curiel agreed to pay Wood $17,500 out of his own pocket, confessed judgment in the amount of $175,000, and assigned to Wood his rights under the PCIC policy. Wood then filed a coverage action against PCIC in California state court, but because the Policy's choice of law provision provided that Montana law

controlled, the state court dismissed Wood's coverage action without prejudice.

Wood then filed her Complaint in this diversity action on May 8, 2014. She pleads five causes of action: (1) declaratory judgment, (2) breach of contract, (3) first-party statutory bad faith under Montana's Unfair Trade Practices Act, Montana Code Annotated § 33-18-201 ("UTPA"), (4) third-party bad faith pursuant to the same provision[2], and (5) punitive damages. The parties filed these motions for summary judgment earlier this year.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court

---

2. Wood's Complaint styles this cause of action as a claim arising under § 33-18-202, which governs misrepresentation and false advertising of insurance policies. She notes that this citation was a typo, and that the cause of action is based on § 33-18-201. It is clear from the substance of this claim that it has nothing to do with misrepresentation and false advertising, and the Court will grant her request for leave to file an Amended Complaint to fix this typo.

must view the evidence "in the light most favorable to the opposing part." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

## ANALYSIS

A federal court sitting in diversity applies the substantive law of the forum state to state law claims. *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). Thus, the Court decides these motions for summary judgment pursuant to Montana insurance law.

**I.     Wood's motion for partial summary judgment.**

**A.     Duty to defend.**

Wood moves for partial summary judgment on PCIC's breach of the duty to defend Curiel in the underlying action. Wood asserts that PCIC's "unilateral fact determination" – that no property damage took place during the policy period – was inconsistent with the allegations in the Complaint and did not support denying Curiel a defense. (Doc. 16 at 13.). PCIC counters that there was no duty to defend Curiel because it determined there was no coverage for Wood's claims. PCIC cites three grounds for this conclusion: (1) Curiel had nothing to do with the

construction work performed on Wood's house, meaning no "occurrence" was attributable to PCIC's insured during the policy period, (2) the Policy did not provide coverage for Curiel's own negligent or defective work product, and (3) damage to Wood's home first manifested prior to the Policy's inception. None of PCIC's arguments holds water, and so the Court holds as a matter of law that PCIC breached its duty to defend Curiel.

"Montana law is well-settled that an insurer's duty to defend its insured arises when an insured sets forth facts which represent a risk covered by the terms of an insurance policy." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004) (citations omitted). "The duty to defend is independent from and broader than the duty to indemnify created by the same insurance contract." *Id.* The duty to defend specifically "arises when a complaint against an insured alleges facts, which if proven, would result in coverage" under the policy at issue. *State Farm Mut. Auto Ins. Co. v. Freyer*, 312 P.3d 403, 410 (Mont. 2013) (citations omitted). "Unless there exists an *unequivocal demonstration* that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples*, 90 P.3d at 385 (emphasis added). "If there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend." *Landa v. Assurance Co. of Am.*, 307 P.3d

284, 289 (Mont. 2013) (citations omitted). "When a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Staples*, 90 P.3d at 385.

"It is well-established that where an insurer refuses to defend a claim and does so unjustifiably, the insurer is estopped from denying coverage and becomes liable for defense costs and judgments." *Tidyman's Mgmt. Services Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) (citations omitted). Furthermore, "a pretrial stipulated judgment may be enforceable against the defendant's liability insurer if the insurer breaches its contractual obligation to defend the insured," because "when an insurer improperly abandons its insured, the insured is justified in taking steps to limit his or her personal liability." *Id.* at 1150 (citations omitted). "[W]here an insurer believes it is not required to provide a defense under the policy, the prudent course of action is to defend the insured under a reservation of rights and file a declaratory judgment action to discern coverage." *Id.* at 1149.

Wood pled facts in her Complaint that, if proven, would trigger coverage under the key provisions of the Policy. As mentioned above, she alleged that

Curiel's and Botello's negligence resulted in a laundry list of damages to her home. Wood alleged that she contracted with Curiel and Botello in August 2009, meaning the construction work itself began at that time and, construing this date in Wood's favor, reasonably extended into the policy period. On its face, the Complaint triggered PCIC's duty to defend.

Moreover, none of PCIC's justifications for denying Curiel a defense satisfy the "unequivocal demonstration" requirement in Montana law. First, the evidence in this case simply does not support a conclusion that Curiel had nothing to do with the construction work on Wood's home. Not only did Curiel confess to and, in part, personally satisfy the judgment in the underlying action, his construction company is listed as the contractor on the building permit for Wood's home, and he signed and filed a mechanic's lien against the property. (*See* Docs. 29-1, 29-2.) Second, the property damage alleged in Wood's underlying complaint can certainly be construed to include damage to parts of her home other than the new construction itself, taking it outside of the "your product" or "your work" exclusions (*see* Doc. 19-1 at 17), and distinguishing this matter from the cases PCIC cites where faulty workmanship was exclusively at issue. Third, though Wood noted in the underlying complaint that she contracted with Curiel and Botello in August 2009, PCIC has not unequivocally demonstrated that all

property damage at issue occurred prior to October 31, 2009, the Policy's inception date. On the contrary, reading the underlying complaint liberally, one could easily conclude that damage occurred throughout the time Curiel and Botello were on the job, or from August 2009 through January 2010. Ultimately, if PCIC wanted to flesh out any of its theories contesting coverage, it should have done so by filing a declaratory action, not by making factual determinations after Curiel tendered a defense.

Based on the foregoing the Court concludes that PCIC breached its duty to defend Curiel in the underlying action, and so grants Wood's motion for partial summary judgment in this respect. This conclusion then compels the conclusion that PCIC is liable for the total amount of the settlement agreement, or $192,500, as well as defense costs. *Tidyman's Mgmt. Services Inc.*, 330 P.3d at 1149. The Court declines to award interest on the underlying judgment.

**B.     Attorney's fees.**

Wood urges the Court to award her attorney's fees incurred in this case and in the underlying case, citing the "insurance exception" to the American Rule, *see Mt. W. Farm Bur. Ins. Co. v. Brewer*, 69 P.3d 652, 655-656 (Mont. 2003), and the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), as bases for the award. As to the former, she contends that, "through assignment from Curiel, [she] was

forced to file suit to obtain the benefits owed under the Policy" (Doc. 16 at 23.), and so clears the threshold of the insurance exception. As to the latter, she contends simply that attorney's fees can be discretionarily awarded under the DJA, and that the facts of this case warrant the Court exercising its discretion.

Based on the analysis in the previous section, though the Court obviously agrees with Wood to an extent regarding her position vis-a-vis the Policy in this case, the Court declines to extend the insurance exception to cover an assignee of the indemnity right under an insurance contract. It is true that Wood was forced to file suit in order to light a fire under PCIC, but she did so to obtain a benefit owed to *Curiel* under the Policy, not to herself. Indeed, though the facts in *Brewer* are distinguishable – a third-party claimant, not an assignee, sought attorney's fees for its declaratory action in the case – the Montana Supreme Court refused to extend the insurance exception to "individuals who are strangers to the insurance contract." 69 P.3d at 661. This is because "[t]he rationale underlying the insurance exception to the American Rule is the existence of a fiduciary duty, and no such duty exists" between the insurer and a third-party claimant. *Jacobson v. Allstate Ins. Co.*, 215 P.3d 649, 656 (Mont. 2009). Again, though the assignment in this case places Wood more in the position of a first-party claimant, the Court does not extend this notion so far as to transfer PCIC's fiduciary duty under the

Policy to Wood.

For similar reasons, the Court also declines to award attorney's fees under the DJA. Montana case law makes clear that an insurer who breaches the duty to defend buys any underlying judgments and defense costs. The Court will keep it at that here. Wood's motion for partial summary judgment is denied as to attorney's fees.

## II. PCIC's motion for summary judgment.

PCIC moves for summary judgment on all of Wood's claims based on the following arguments: (1) Wood does not have standing to bring this coverage action because PCIC never consented to Curiel assigning his rights under the policy to her, (2) there is no coverage under the policy for the property damage alleged in Wood's underlying complaint, (3) Wood cannot sue PCIC under the UTPA because PCIC is not an insurer as defined in the statute, (4) Wood cannot sue PCIC under the UTPA because she is not an insured, and (5) Wood fails to state a claim under § 33-18-202 of the UTPA. Each of these arguments is readily dispensable.

As to PCIC's first argument regarding Wood's standing as assignee, it is fully settled law in Montana that when an insurer fails to uphold its end of an insurance contract, an insured-defendant may validly assign his rights under an

insurance policy to a plaintiff. *Tidyman's Mgmt. Services Inc.*, 330 P.3d at 1149 ("when an insurer improperly abandons its insured, the insured is justified in taking steps to limit his or her personal liability"). Furthermore, the transfer/assignment provision in the Policy, which purports to require PCIC's consent prior to any assignment, is ineffectual here given PCIC's breach of the duty to defend *prior to* Curiel assigning his rights to Wood. *See* 2 Allan D. Windt, *Insurance Claims and Disputes* § 9:15 n.1 (6th ed., West 2015) ("no-assignment clauses in insurance policies . . . should not be enforceable [] after an insurer has breached the insurance contract . . . [because] an insurance company should no longer be able to require compliance with the policy conditions after it has materially breached its own contractual obligations"); 3 Steven Plitt et al., *Couch on Insurance* § 35:8 (3d ed., West 2015) ("[G]eneral stipulations in policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as distinguished from a claim arising under the policy, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim. The purpose of a no assignment clause is to protect the insurer from increased liability,

and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity").

For these same reasons, PCIC's fourth argument – that Wood cannot sue PCIC under the UTPA because she is not an insured – fails as well. As assignee of Curiel's rights under the Policy, Wood stands in Curiel's shoes as the insured under § 33-18-242(1)[3]. Regardless, "[a]n insured *or* a third-party claimant has an independent cause of action against an insurer" for certain violations of § 33-18-201 of the UTPA, and Wood is certainly a third-party to the Policy here. § 33-18-242(1) (emphasis added).

The Court in part addressed PCIC's second argument – that there is no coverage under the policy for the property damage alleged in Wood's underlying complaint – in its review of Wood's motion for partial summary judgment above. Indeed, PCIC takes its second argument here from its brief opposing Wood's motion for partial summary judgment verbatim. While the standard for determining whether an insurer's indemnity obligation has been triggered differs from the standard governing the duty to defend, PCIC nevertheless fails to meet the former. *See State Farm Mut. Auto Ins. Co. v. Freyer*, 312 P.3d 403, 411

---

3. The Court reiterates that this statement is consistent with the Court's denial of attorney's fees above, because the assignment transferred the indemnity right, not *PCIC's* fiduciary obligations.

(Mont. 2013) ("An insurer [] breaches the duty to indemnify by failing to provide coverage when (1) the established facts trigger coverage under the terms of the policy, and (2) the extent of the claimant's damages are undisputed or clearly exceed policy limits.") PCIC has not proven that "established facts" bring Wood's allegations outside the scope of the Policy. *See Id.* ("'Established facts' in this context are facts that are either undisputed or are initially disputed but subsequently determined by the fact finder.") Indeed, having breached the duty to defend, coverage is essentially a non-issue.

PCIC's third argument – that Wood's third and fourth causes of action fail under the UTPA because PCIC is not an insurer as defined by statute – is an absolute non-starter, and demonstrates a lack of diligence on PCIC's part. The statutes governing risk retention groups, Montana Code Annotated § 33-11-101 et seq., specifically provide that "[e]ach risk retention group, its insurance producers, and its representatives shall comply with [the UTPA]," and that "[e]ach risk retention group shall comply with the provisions of [the UTPA] regarding deceptive, false, or fraudulent acts or practices." Mont. Code Ann. § 33-11-104(4), (5). PCIC is irrefutably subject to liability for any proven violations of the UTPA, and the Court is disheartened by PCIC's representations otherwise.

Finally, as mentioned in the footnote above, it is clear that Wood

erroneously cited § 33-18-202 in her Complaint, and that leave to amend would more appropriately be granted here than would summary judgment in PCIC's favor on what is an unintended claim on Wood's part. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be "freely give[n] . . . when justice so requires"); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) ("requests for leave should be granted with extreme liberality") (citations omitted).

Based on the foregoing, the Court finds that PCIC has not carried its burden on any of the grounds it asserts in its motion, and therefore is not entitled to judgment as a matter of law.

Accordingly, IT IS ORDERED that:

(1) Plaintiff Andrea Wood's motion for partial summary judgment on the duty to defend (Doc. 15) is GRANTED IN PART. Wood's motion is GRANTED as to PCIC's breach of the duty to defend, and as to her entitlement to the amount of the judgment and defense costs in the underlying case. Wood's motion is DENIED as to her entitlement to attorney's fees in this and the underlying case.

(2) Defendant PCIC's motion for summary judgment (Doc. 23) is DENIED.

(3) Wood is GRANTED leave to file an Amended Complaint to correct

her citation to Montana Code Annotated § 33-18-202 in her fourth cause of action.

DATED this 6th day of November, 2015.

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court